We'll now proceed to the fourth case of the morning, the United States v. Sainz. Ms. Christensen. Good morning, Your Honor. Welcome back. Thank you. May it please the Court, counsel. My name is Joanna Christensen. I represent the appellant Jonathon Sainz in this matter. There are two issues that were presented in our briefs. The second of these issues is about Thompson supervised release conditions. The government's conceded that issue, so unless the court has questions about it, and there have been some questions raised about it in other cases, I will concentrate on the restitution issue. The district court imposed restitution under 2259 in this case without considering Mr. Sainz's relative role in the causal process. Unfortunately, Mr. Sainz was sentenced in the waiting time when Paroline had been granted cert but not yet decided, and made the court at that time the best effort possible to determine what the appropriate amount of restitution was in this case. The court ordered a little over $8,300 in restitution to Cindy, who was the identifiable victim, or I think the only identifiable victim in this case, of the child pornography that Mr. Sainz had downloaded. The court used the 1 over N formula, which the government has used in many cases, has been affirmed in Gamble, which is I believe the Sixth Circuit. This court addressed the issue in Larinetta, also before Paroline, and didn't really reach a conclusion about the remaining factors that were addressed in Paroline, probably because Larinetta didn't have a lot of evidence about the background of the child pornography at issue. Then came Mr. Sainz filed the brief, his opening brief, and found that restitution is proper under the proximate cause theory, but the district court must also consider the extent of the loss that the individual defendant caused. And that's where we find ourselves at issue here, is we're not contesting that there is loss, we're not contesting that Mr. Sainz was a cause of that loss, we're contesting the amount and how that amount was determined. Ms. Christensen, the Supreme Court has a extraordinarily difficult problem. It seems that every step to back away from mandatory language, from formulas, it still leaves wide discretion. Yes. So, how do we find an abuse of discretion here? I think it's a difficult opinion in that way, Your Honor. I agree. However, it's a topic that I'm not sure there could be a mathematical formula. The abuse of discretion we're asking the court to find here, because it's the standard, is that the court didn't make individualized findings about Mr. Sainz's role. Justice Kennedy wrote for the court, there are a variety of factors district courts might consider. Right. And it's very loose. It is very loose. This is neither severe nor trivial, right? Right. So, those are the terms that he used for the court. Right, and when it's been affirmed, restitution order imposed pre-Paroline has been affirmed post-Paroline, other circuit courts, and I believe the government filed a 28-J about one case, that one, it actually wasn't raised in the district court, but also the district court considered more of these factors, and I don't know where the tipping point is as far as abuse of discretion, not abuse of discretion. The Tenth Circuit found in Dunn that it was a reversible error because the court hadn't considered these factors. It really, if you look at, I guess there are seven factors that you can kind of shape out of the Paroline decision, and in our case, in Mr. Sainz's case, the district court really considered one of them, and that's the number of the past defendants, and as I mentioned in my reply brief, that another court, Cristomi, even adding the number of future defendants, which is nearly impossible to calculate, but the court said, you know, I think a pretty good average might be equal to the number of past defendants. I think that's a fairly reasonable way to quantify an unquantifiable... It's total guesswork, right? It is total guesswork, as is the factor that the court should take into consider all offenders who will never be caught. What amount do you think would have been reasonable here? I think that certainly when you take the past and future under Cristomi's analysis, I thought that was fairly persuasive. That would cut it in half to 4,000. I think another very important point in Mr. Sainz's case is he did not distribute these images, and when you look at the past defendants that have been ordered to pay restitution to Cindy, it's widely variable about how much they've been ordered, and of course we don't know what those factors are either. I think there is a problem in this case. Paroline leaves it wide open, and it's kind of up to us to figure out what to do now, but I think more findings would be helpful. If we remand, could the district judge consider all of these factors that might be a risk? I think it's unlikely in this case. I don't think a nominal amount is appropriate because we admit to the harm. I think 8,000, my own personal feeling, using my discretion, is too much, but again, it's a nearly impossible quantifiable number. Ms. Christian, didn't the district judge also consider it only losses post his second factor? Yeah, that is a second factor. The parties actually agreed to cut that down. I think the government said, you know, we're only asking for this from the point of his conviction or of his offense, I believe. I think the one thing the district court was brought up to the district court and did not consider that something that is quantifiable is whether he distributed the images, and because when you look at a chain of this harm that's being caused, starting with the offender himself against Cindy, then the distribution of the images worldwide, really, when an individual defendant like Mr. Sainz stops that by not distributing them further, even a small stoppage, I think that deserves some reduction. The district court did not want to consider that as a difference. Ms. Christensen, before you sit down, I do want to ask you about the supervised release questions and, in particular, why the defendant thinks this is going to make him better off. With regard to the conditions or the sentence? The conditions, because, for example, I can imagine a district judge who has imposed this sentence saying to himself, well, I've got a defendant here who's now, in his appeal, indicating that when he gets the supervised release, he wants access to pornography, he wants access to children, and he wants unmonitored computer use. That makes me much more worried than I was before about his risk of recidivism. Maybe I should just make this a longer prison term. Certainly, we're not asking for those conditions not to be applied at all. Those three conditions, in particular, we're asking... Could a judge think that way on remand? I suppose it depends on how it's argued on remand, but when I've been arguing these cases on remand, particularly regarding these three special conditions, it's not that we're saying he wants to have contact with all children all the time, he wants to work in a school, he wants that. You can spin it on remand, but could a district judge... It's a package, right? Right. Prison time versus supervised release conditions. We're sending a lot of cases back in response to these recent decisions, I think none of which I have been on the panel of. I am wondering whether they are ultimately going to wind up benefiting the folks who are prevailing on those appeals with their overall sentence about the part they care about most, the sentence. I think in my experience, and I've represented or my office has represented many of those defendants, in my experience, district court judges are not touching the sentence in most cases. There are defendants who I think are risking a higher sentence and I've absolutely informed the clients that are mine of that. It's an analysis that we do raising any issue, but as far as the conditions, I think mostly the district courts have understood that we're trying to refine and redefine these conditions to be more workable for both the probation office and the court and, of course, our clients. So the no contact, for example, it's no contact except for commercial, incidental commercial contact. That's been pretty widely adopted by both the defense bar and the prosecution bar. The computer monitoring, I think that's a question of their ability to do legitimate work on the computer and I think this court's recognized that it's nearly impossible to do anything in this world today without using a computer, without accessing the Internet. I'm not saying there should be no monitoring. I mean, clearly he offended using a computer so it makes sense to limit his computer use. It's a question of whether those findings were made by the district court that it was necessary in Mr. Sain's case.  completely before he was sentenced, so he may be less of a risk than another offender. None of these were surprises, right? They were all in the PSR, right? Yes, the special conditions, I believe, are in the PSR. There was no objection to any of those by defense counsel, were there? There has not been in any of these cases. Well, you know, that's something that'll have to be faced when we go back on these cases. I also was not on any of these panels. I agree, Your case where in this, what is it, this peer-to-peer file sharing, I don't know how extensive the hearing was on that, but you could have, in this case, a pretty expansive question about whether he distributed things. I understand with regard to the amount, that wouldn't matter because we're talking specifically about one individual. Right, right. The decision here to expose greater inquiry into his distribution and his peer-to-peer. Regarding the restitution amount? No, compared to the sentence. Okay. He received enhancements for that. It's certainly, we are not disputing that he didn't distribute pornography in general when we're talking about restitution, of course. It's that, but we're certainly not disputing his actions in this case. He's never disputed that. So, if you were to have a remand decision in this case, asking the judge post-Paroline to focus on three things, Ms. Christensen, and I ask this obviously respectfully. You know the high regard I hold you and your office in. Thank you. What direction would we give this district judge on an amount as against that 1.3 million? Well, I think this court could certainly take the same tact as the Supreme Court and give very little direction, just say consider these factors. Well, that's not too helpful. But. The district court. I'm not going to be critical of the high court, that's not my place and I wouldn't do it. But we do have a responsibility now that we're into this new world with regard to these kinds of cases and to the supervised release. To give some guidance, now that may be a particularly sensitive for this panel because, as you well know, we were privileged to hold that post, everybody on this panel. So, I for one am very concerned, but then with the government as well, about what we ask of a district judge in these new settings. Right. I think to the extent that these are some quantifiable factors, the number of past defendants, the distribution, the part of, you know, things that are actually known factors, I think those are definitely things that the district court should consider. And what's the difference between a hundred prior defendants that offended and 50? I mean, what could possibly impact a judge's discretion whether he was balancing this individual against 50 others or a hundred others. Right. And as against a total amount. I think the only answer I have to that is that these victims have consistently said that the numbers matter to them. The more times that their images are circulated matters. That's a correlation. Well, that could be 50 prior individuals could circulate more than the hundred prior individuals. I mean, you know, to get into the specifics of distribution as opposed to just the global recognition there has been distribution by, quote, several or many others, it seems to me any formula that doesn't just leave it to a judge's discretion, reasonable discretion, is asking an awful lot of a district judge. I ask it of you because you're such an experienced counsel and I really seek your counsel on this. But I, for one, feel an obligation to just give a little more guidance and so that's why I was leaning on you a little bit. I think, and I know my time's up, but I'll respond just briefly. And I believe it's in Paroline, the Supreme Court did mention that the offender who actually made the images was sentenced and sentenced to some restitution. And I, to the extent that's known, and I believe it's known in Cindy's case but I'm not sure what that number is, that's a factor as well because this is the person that started the whole process. So and that was just $6,000 in Amy's case, which to me is way under for what his role in this cause was. But surely later courts shouldn't be bound by that as a ceiling, should they? I don't think bound by it certainly should be part of the case. But if the offender was only made to pay $6,000, is his part of this aggregate cause worse or not as bad as, say, Mr. Sane's conduct? Well how can you possibly compare the creator versus the distributor if the distributor causes, you know, this enormous viewing later? It just, it's challenging for me. It's a difficult question. I think no matter which way the court ends up in this case individually, it will be guidance for future cases because certainly this will come up. Or not. Will come up again. Right, and that's why I'm extending you. When we start talking about discretion, of course, we get to the point where nobody can tell you how to exercise your discretion. I think that might have happened a little bit in Thompson, you anybody was really at. So how do you develop good judgment? By exercising bad judgment. Sure, that's how we learn, right? Well, I thank you for your time, Your Honor. Thank you, Ms. Christiansen. Mr. Haxel. Good morning and may it please the court Bowling Haxel on behalf of the United States. The district court did not abuse its discretion when it ordered approximately $8,400 in restitution to pornography recovered from the defendant's computer. There were really two issues in the restitution determination. One is causation, which counsel concedes, so I won't dwell on it. The second is the calculation portion. How the district court decided and got to $8,400. First, the court was provided a variety of expenses incurred by Cindy legal fees, mental health treatment, future lost earnings. All of those items were contained in expansive filings prepared by Cindy's attorney and were presented to the district court. From there, the government did essentially chop down that amount, taking out certain expenses that predated the defendant's offense conduct. Our view, and as was adopted by the court, was that the defendant was not responsible for lost wages prior to his offense conduct, as he couldn't be. The court then applied the one over end standard at the government's recommendation. And I proposed to the court that the court did not abuse its discretion in applying that standard. Under these facts, in this case, that was an appropriate standard to use. What was n in this case? N is the number of past defendants plus one for the defendant. What was the quantity in this case? I believe it was about 136, your honor. I'm also not trying to criticize the Supreme Court's decision in Paroline. It's an intractable problem that we're all trying to deal with, but it's not clear to me why n is even relevant here. And, for example, if n is low for the person who is, let's say, the second or third to be convicted with a particular victim, it could wind up being an enormous number. And as we said in our brief, your honor, the one over n isn't the standard, the be-all and end-all for every case. Just in this specific case, it was an appropriate standard to use. It wasn't necessarily the only one, but it was a proper one here, and the court did not abuse its discretion in applying it. And it's important to realize that certain of the Paroline factors were considered by the court. The number of defendants is necessarily included in the formula applied. However, the court was aware, it was presented to the court, that there were six images. So one of the specific Paroline factors was before the court. The court was aware that the defendant had no connection to the initial production of the images. That was clear from the outset. The court was also clear, it was also clear to the district court, that the defendant had not reproduced or distributed images of the victim. So again, yet another of the Paroline factors was, in fact, before the district court. Now, obviously, the court doesn't dwell on it because there was no evidence of it. Had there been evidence that the defendant had distributed the images, the follow-up questions would have occurred. Well, how many times? And these are all things that could have been considered under that scenario. It just didn't happen here. The court properly considered what it should have and, in many ways, was spot on in what the Supreme Court later said in Paroline. Did the district court consider future-looking defendants? It did not. That was really the only of the Paroline factors that was not considered. And I submit, Your Honors, that, as counsel notes, that's nearly an impossible burden to put on the district court, to look into the future how many of these images are likely to be distributed, law enforcement's ability to arrest and prosecute those individuals. Counsel specifically notes the initial productions. I don't know, for example, whether or not those productions occurred pre-internet, which has allowed for a massive transfer of these images that could not have been considered by sentencing courts 20 years ago. So I would suggest, Your Honor, that, in many respects, looking at the initial restitution orders is not particularly helpful to the judges. Ultimately, however, the court considered what it should have and did not abuse its discretion in doing so. Before I move to the supervised release issues, if there are other questions on restitution, as far as the court's question, Your Honor, about the remand, obviously we conceded that there were three specific supervised release conditions that were problematic in light of Siegel and other rulings. However, I don't know that it's necessary for a full-blown sentencing hearing as to the term of incarceration because these are very limited issues. One is whether or not the defendant has the ability to pay for certain monitoring, how that's addressed. The other, and as we noted in our brief, the no contact with children prohibition, the evidence is in the record to support the finding. It just needs to be tailored in light of this court's rulings. And the same goes with respect to viewing pornography. Obviously, the court was concerned about the ability to define those terms. I think it's possible in this specific case, unlike some of the defendants in Thompson, to address these very, very limited supervised release conditions on their own without having to reopen the entire system. The government seems to agree we ought to revisit the ability to pay for his participation. One of the specific, there were three terms. One is that he participate in the program and he pay for it. And I believe- That's the monitoring? Yes, sir. Correct. And I believe the, it may have been Siegel, I apologize, Your Honor. But the court's concern when that specific condition was reversed in another case was what happens if he doesn't have the ability to pay? Is he in violation? Didn't the record here show he had steady employment? He did previously. Now, as a convicted felon who has this type of offense, his ability to maintain that employment in the future is certainly going to be more difficult. But I do believe that already the supervised release conditions are being addressed with the court's prior guidance. And again, I think we can narrowly tailor the remand just for these three conditions without having to reopen the entire hearing. And unless the court- Is the defendant entitled to be present for that hearing? As part of a sentencing hearing, yes. If the district judge wants to broaden it, is there anything that would stop him in this case? Obviously- I understand you're not going to be pushing. No, sir. But again, obviously the court's ruling, whatever, if it directs the court only to entertain these issues is different than if it says a full sentencing hearing is necessary. I'll leave it to the district judge's discretion on that. So, if there are no other questions, thank you very much. The government respectfully asks that the court affirm the restitution order and remand for the limited purpose of determining those specific supervised release conditions. Thank you, Mr. Axel. Ms. Christensen, your time has expired, but you were subject to a fair amount of questioning, so you could have another two minutes. I just wanted to say about the remand, this is an issue that's a little sticky right now in this court about the extent of the remand of these Thompson cases. And because of the language of Thompson, our position is that they are full remands. This court has issued Sewell, Kappus, I believe there was a fourth one after Thompson. Sewell limited the remand, Kappus gave a full remand, although with some I think in this case, it may be appropriate for the district court to make the decision that the conditions should be addressed. However, we've asked for a full remand because at this point, Thompson is controlling. Can counsel in full remand agree to, with the government, if both at the initial sentencing? Can counsel agree? Could both sides agree, a defense counsel and the government agree to, on a full remand setting, to accept the findings? If a judge says, the factual findings I made, X, Y, and Z, stand. So you don't have to call in witnesses. I'm thinking particularly about the situation, let's say we have an abused minor who testified in that case. And the judge says, I took that testimony, it's three years later, I'd like to see if both sides would agree that we do need to call that individual back. I think that parties can definitely agree on that, particularly when we're talking about sentencing guidelines calculations. She would have to get notice though, right? The victim? I believe so. And would have, if she wanted to appear again, she'd have a right? Yes. And God knows what even the notice would do. Well, and I've certainly heard that from actually AUSAs who have said that every time it remands, it reopens these issues. And I certainly understand that. I don't think that necessarily negates a defendant's legal right to have his case decided by this court. But yes, that's part of the situation here. I think that defendants can waive many issues. The problem we're seeing with Thompson is that Thompson imposed a duty on the court to raise, to address these supervised issues even where the parties agree. That's problematic because, as Judge Hamilton said, sometimes defendants want to agree to get either consideration from the government, consideration from the district court, and that's certainly been an issue in the resentencings that I've seen, and in the sentence, the original sentencing since Thompson. So I agree that parties should be able to agree on what is presented and what's perhaps not presented. Thank you. Mr. Axel, Ms. Spaulding.